

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed April 14, 2026**

_____
**United States Bankruptcy Judge**

_____

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **CARROLLTON GATEWAY** | § | **CASE NO. 24-33585-SGJ11** |
| **DEVELOPMENT PARTNERS, LLC** | § | |
| | § | |
| **Debtor.** | § | |
| | § | |
| | § | |
| **CARROLLTON GATEWAY** | § | |
| **DEVELOPMENT PARTNERS, LLC** | § | |
| | § | **ADV. PRO. NO. 25-03001-SGJ** |
| **Plaintiff,** | § | |
| **vs.** | § | |
| | § | |
| **NAMHAWK, LLC, et al.** | § | |
| | § | |
| **Defendants.** | § | |

### MEMORANDUM OF DECISION AND ORDER GRANTING DEBTOR'S MOTION
### FOR SUMMARY JUDGMENT [DE # 4]

## I.    INTRODUCTION

The Court held a hearing on February 26, 2026, to consider oral arguments on the Motion for Summary Judgment, along with supporting evidence ("MSJ") filed February 27, 2025 in the above-referenced action ("Action"), by Carrollton Gateway Development Partners, LLC, the Plaintiff and Chapter 11 Debtor ("Debtor" or "CGDP").[1] The Action was removed by the Debtor from a Dallas County state court soon after filing its Chapter 11 case. The Action names as Defendants an entity named Namhawk, LLC ("Namhawk") and Namhawk's various members. The Action sets forth primarily a count of breach of contract, and alternative counts of quantum meruit, unjust enrichment, and constructive trust/foreclosure. The Action is one of numerous lawsuits between the Debtor and Namhawk (and sometimes others) regarding a certain parcel of real property located in Carrollton, Dallas County, Texas (the "Property"). Each Namhawk and the Debtor have owned the Property during relevant times. The Debtor ultimately filed the pending MSJ, asking this Court to enter summary judgment against only Namhawk, and solely on Debtor's breach of contract claim against it. The Debtor has argued entitlement to breach of contract damages in the amount of $520,000.00 through February 27, 2025 (the date of the filing of the MSJ) and for an additional $5,000.00 per month until any judgment is paid in full. The Debtor further moved for the Court to dismiss the Debtor's other claims asserted herein against Namhawk. The Debtor further moved for severance of its claims against Namhawk into a new cause number so that the Court could render a final judgment against Namhawk.[2] Namhawk answered in the Action ("Namhawk Answer") and also filed an "Objections and Conditional Response to Motion for Summary Judgment and Motion to Strike," supported with a Declaration of Young Sung

---

[1] *See* DE # 4. References to "DE # ___" throughout indicates the docket entry in this Adversary Proceeding No. 25-03001.

[2] The Court presumes that Debtor is seeking to preserve the claims in this Action against the co-defendant members of Namhawk, although it is not entirely clear.

2

("Namhawk Response to MSJ").[3]  The Debtor appeared at the February 26, 2026, hearing through attorney J.D. Reed and Namhawk appeared through attorney William Chu. The Court grants the MSJ, as explained below.

## II.    LEGAL STANDARD

This Court has subject matter jurisdiction over this Action, as it relates to a case under the Bankruptcy Code. 28 U.S.C. §§ 157(b)(2) and 1334. While state law claims are involved, the disputes involved what was property of the estate at the time the Action was removed and claims made not just by the Debtor but also claims made back against the Debtor by Namhawk. 28 U.S.C. §§ 157(b)(2)(A), (B) and (O) and 28 U.S.C. § 1334(e)(1). Thus, this is likely deemed a core proceeding, and this Court has constitutional authority to enter a final order in this matter. Moreover, in the event that noncore matters are involved, both parties have consented to the bankruptcy court entering final orders in this Action. Namhawk did not contest bankruptcy subject matter jurisdiction in its Answer, its Response to MSJ, and did not file a statement pursuant to Bankruptcy Rule 9027(e)(3). Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409(a).

Rule 56(a) of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 "mandates the entry of summary judgment, after an adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[4] Because "[i]n

---

[3] *See* DE # 9 and DE # 10.
[4] *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."[5] A fact is **material** "if the governing substantive law identifies it as having the potential to affect the outcome of the suit."[6] A dispute as to a material fact is **genuine** "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[7]

A movant can discharge its burden of proof by making a prima facie showing in support of its position on a particular issue.[8] Once the movant has done so, the non-moving party must set forth specific facts controverting the movant's prima facie case, though it must present more than a mere "scintilla" of evidence in its favor.[9] Mere "conclusory allegations" or "unsubstantiated assertions" are not enough to defeat a well-pleaded motion.[10] Accordingly, summary judgment is appropriate if the evidence tendered by the non-moving party is "merely colorable" or "not significantly probative."[11] When evaluating a motion for summary judgment, the court views the facts "in the light most favorable to the nonmoving party" but "only if there is a 'genuine' dispute as to those facts."[12] "[I]t is not incumbent upon the court to comb the record in search of evidence that creates a genuine issue as to a material fact."[13] Rather, "[t]he nonmoving party has a duty to designate the evidence in the record that establishes the existence of genuine issues as to the

---

[5] *Celotex*, 477 U.S. at 322–23.

[6] *Hutton Commc'ns, Inc. v. Commc'n Infrastructure Corp.*, 461 F. Supp. 3d 400, 403 (N.D. Tex. 2020) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[7] *Id.* (citing *Anderson*, 477 U.S. at 248) (other citation omitted)).

[8] *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1084–85 (5th Cir. 1994).

[9] *Anderson*, 477 U.S. at 252.

[10] *Little*, 37 F.3d at 1075.

[11] *Anderson*, 477 U.S. at 249–50.

[12] *Scott v. Harris*, 550 U.S. 372, 378, 380 (2007); *see also Hacienda Records, L.P. v. Ramos*, 718 F. App'x 223, 234 (5th Cir. 2018) ("The court considers the record as a whole, and draws all justifiable inferences in favor of the non-movant. But the non-movant bears the burden of demonstrating by competent summary judgment proof that there is a genuine dispute of material fact warranting trial.") (internal quotations omitted).

[13] *Hutton Commc'ns*, 461 F. Supp. 3d at 403 (citing *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003)).

material facts."[14] "Summary judgment is appropriate where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, or where it is so overwhelming that it mandates judgment in favor of the movant."[15] If the nonmoving party fails to meet its burden of submitting competent summary judgment evidence that there is a genuine dispute as to a material fact, "the motion for summary judgment *must* be granted."[16]

### III.   THE MATERIAL FACTS THAT ARE NOT SUBJECT TO ANY GENUINE DISPUTE

The Debtor's breach of contract claim that is subject of the pending MSJ involves a Settlement Agreement executed on or about August 28, 2023, by CGPD, Namhawk, and Namhawk's members, after mediation.[17] The undisputed facts are that, pursuant to the Settlement Agreement, among other things, Namhawk was required to: (i) pay the Debtor the sum of $500,000 (the "Settlement Funds") the earlier of January 15, 2024 or upon the expected, impending sale of the Property, (ii) deliver a deed of trust in favor of the Debtor securing the payment of the Settlement Funds with a second lien deed of trust (the "DOT") encumbering the Property, and (iii) keep the Debtor reasonably informed as to Namhawk's efforts to sell the Property. It is undisputed that, after the Settlement Agreement was executed, Namhawk failed to deliver the DOT and failed to provide any further information to the Debtor or its counsel regarding efforts to sell the Property. It is further undisputed that, on January 12, 2024, Namhawk represented through counsel, a Mr. Frisch, that Namhawk would be unable to timely pay the Settlement Funds and asked to discuss

---

[14] *Id.* at 324.

[15] *Armstrong v. City of Dallas*, 997 F.2d 62, 67 (5th Cir.1993); *see also Armstrong*, 997 F.2d at 66 n.12 ("We no longer ask whether literally little evidence, i.e., a scintilla or less, exists but, whether the nonmovant could, on the strength of the record evidence, carry the burden of persuasion with a reasonable jury."); *see also Anderson*, 477 U.S. at 251–52 (stating that the inquiry under a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.").

[16] *Little*, 37 F.3d at 1076 (emphasis added).

[17] *See* DE # 4, Attachment 1 - Declaration of Dennis M. Holmgren, Exhibit B.

an extension. Such correspondence was submitted as part of the Debtor's MSJ evidence. After a failure to get meaningful information, any payments, or an executed DOT, the Debtor filed suit against Namhawk and its members on January 16, 2024, Cause Number DC-24-00686, in the 191st Judicial District Court, Dallas County, Texas, which was subsequently removed to this Bankruptcy Court and became this pending Action.

It is further undisputed that, after the filing of this Action in state court, Mr. Frisch, on behalf of Namhawk, reached out to the Debtor on February 21, 2024, and agreed to tender an executed DOT on the Property in recordable form and to cause Namhawk to make monthly delay payments (the "Delay Payments") in the amount of $5,000.00 per month, or 1% of the outstanding balance of the Settlement Funds "for each month it doesn't close." Mr. Frisch's February 21, 2024, correspondence was attached to the MSJ as Exhibit F.

There were delays and related correspondence, with such correspondence contained in the unrefuted MSJ evidence record.  It does not appear from the correspondence that Namhawk ever disputed its obligation to pay the Settlement Funds and Delay Payments. Eventually, the Debtor received the DOT that was contemplated in the Settlement Agreement, which was recorded as Document 202400148664 in the Real Property Records of Dallas County, Texas (the "DOT"). A copy of the DOT was in the MSJ evidence at Exhibit J.

After the recording of the DOT, it is undisputed that Namhawk never paid any of the Settlement Funds or Delay Payments to the Debtor. To date, no funds have been paid under the Settlement Agreement.

It is undisputed that the Property was subject to a first lien debt to Cadence Bank—which was going to mature in September of 2024. Accordingly, in light of the breaches of the Settlement Agreement (e.g., failure to pay the Settlement Funds to the Debtor when required; delays in

6

delivering of the DOT to Debtor; failure to keep the Debtor informed about the efforts by Namhawk to sell the Property), and with a potential foreclosure of the first lien by Cadence Bank imminent, on September 10, 2024, the Debtor filed and recorded a Notice of Trustee's Sale, a copy of which was submitted as part of the MSJ evidence. Proof of proper service of the foreclosure sale was submitted as part of the MSJ evidence at Exhibit K–P.

On October 1, 2024, the Debtor foreclosed on the Property at a foreclosure sale which occurred at the location noticed in the Notice of Trustee's Sale. On October 2, 2024, the Debtor caused a Foreclosure Sale Deed to be recorded in the Real Property Records of Dallas County, Texas as Document Number 202400199102. A copy of the recorded Foreclosure Sale Deed was submitted with the MSJ evidence at Exhibit M. It appears there were no irregularities in the conduct of the sale—none have been alleged. It is unrefuted that the Debtor credit bid $50,000.00 of its second lien DOT at the foreclosure sale. It is unrefuted that the Property was subject to a first lien debt of trust in favor of Cadence Bank at the time (in the amount of approximately $6.7 million). The Debtor filed bankruptcy soon after it foreclosed on the Property to attempt to deal with the debt of Cadence Bank.

The Debtor represents in its MSJ that, as of February 27, 2025, the original Settlement Funds in the amount of $500,000.00 are due, owing, and unpaid. As of February 27, 2025, Delay Payments in the amount of $70,000.00 are due, owing, and unpaid. As of February 27, 2025, no payments have been made under the Settlement Agreement or otherwise.

Based on this unrefuted sequence of events, the Debtor argues that it is entitled to a damages award of $520,000 as of February 27, 2025 (calculated through the date of the MSJ), plus another $5,000 per month until payment of any judgment herein. It calculates this as follows: $500,000 pursuant to the Settlement Agreement, plus $70,000 (14 months of unpaid Delay

Payments at $5,000 per month), less the Debtor's $50,000 credit bid at the October 2024 foreclosure sale. To be clear, the Debtor asserts that it is entitled to an additional $5,000.00 per month up until the time of payment of this judgment. The Court asked for post-hearing briefing on whether this was an appropriate calculation of damages under the Texas Property Code and case law. The Debtor provided a letter brief on March 6, 2026, but Namhawk did not.

## IV.   THE BREACH OF CONTRACT CLAIM

In Texas, "[t]he essential elements of a breach of contract action are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach."[18] Under Texas law, settlement agreements are subject to the ordinary rules of contract interpretation.[19] Generally, "contract terms are given their plain, ordinary meaning, considered in light of the contract as a whole, unless the contract itself shows that the parties intended the terms to have a different, technical meaning."[20] Moreover, "objective manifestations of intent control," and courts are to "presume parties intend what the words of their contract say."[21]

The Settlement Agreement is clear regarding Namhawk's obligations thereunder. It is undisputed that Namhawk failed to timely provide information regarding its sales efforts and failed to timely tender the DOT to the Debtor in recordable form as required under the Settlement Agreement. Most importantly, it is further undisputed that Namhawk was obligated to pay the sum of $500,000.00 to CGDP on or before January 15, 2024. Shortly before that deadline, Namhawk

---

[18] *Smith Int'l, Inc. v. Egle Grp., LLC,* 490 F.3d 380, 387 (5th Cir. 2007) (quoting *Valero Mktg. & Supply Co. v. Kalama Int'l, L.L.C*., 51 S.W.3d 345, 351 (Tex. App. 2001)).

[19] *Tex. Disposal Sys. v. FCCI Ins. Co.,* 854 F. App'x 576, 579 (5th Cir. 2021) (citing *URI, Inc. v. Kleberg Cnty*., 543 S.W.3d 755, 763 (Tex. 2018) (relying on contract principles to interpret a settlement agreement).

[20] *Lyda Swinerton Builders, Inc. v. Okla. Sur. Co.,* 903 F.3d 435, 445 (5th Cir. 2018) (citing *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 158-59 (Tex. 2003).

[21] *Tex. Disposal Sys.*, 854 F. App'x at 679 (quoting *URI*, 543 S.W.3d at 763-64)

acknowledged it and indicated that it did not have the money to pay the Debtor what was owed. Namhawk never challenged its liability to the Debtor for the Settlement Funds. Instead, it agreed to make Delay Payments in the amount of $5,000.00 per month. It is undisputed that Namhawk failed to make such payments. No material fact issue exists, and the Debtor is entitled to judgment as a matter of law.

## V.      CONCLUSION AND DAMAGES AMOUNT

As noted, the Court had questions about the calculation of the proper amount of breach of contract damages and invited post-hearing briefing.  The Debtor submitted post-hearing briefing and Namhawk did not. It appears that the proper calculation of damages (for essentially a deficiency judgment against Namhawk) is: $500,000, plus $5,000 per month from January 15, 2024 (when the $500,000 was originally due) through October 1, 2024 (when foreclosure on the Property pursuant to the Settlement Agreement and DOT occurred—which would be eight months of Delay Payments, or $40,000, less $50,000 (the credit bid)). Thus, a damages award of $490,000. No attorney's fees have been sought/presented by the Debtor. The Court concludes that the $5,000 per month of Delay Payments should be cut off as of the time the Debtor foreclosed on the Property and should not be continuing to accrue.

The Court notes that Namhawk might have made an affirmative defense/challenge to the amount of damages sought here—essentially it could have argued under Texas Property Code section 51.003 that the fair market value of the Property might have been higher than the above computation contemplates. Indeed, there have been sale contracts during the bankruptcy case (none of which ultimately closed) that were a few million dollars more than the first lien DOT and the second lien DOT on which the Debtor foreclosed. However, to be clear, section 51.003 of the Texas Property Code requires a party such as Namhawk to request, prove, and obtain a finding of

9

the Property's fair market value as of the date of the foreclosure so as to potentially show that the fair market value exceeded the foreclosure sale price.[22] Namhawk did not avail itself of that opportunity. Therefore, the Debtor is entitled to summary judgment in the amount of $490,000 against Namhawk. The Debtor shall upload a form of judgment consistent with this Memorandum of Decision and Order.

####### END OF MEMORANDUM OF DECISION AND ORDER #######

---

[22] *PlainsCapital Bank v. Martin*, 459 S.W.3d 550, 555 (Tex. 2015); *Moayedi v. Interstate 35/Chisom Rd., L.P.*, 438 S.W.3d 1, 6 (Tex. 2014).